IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARQUIS WILSON, ) | |
| ) | Civil Action No. 7:20cv00441 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| C/O FOWLER, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Marquis Wilson, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, against Correctional Officer Fowler, Sergeant Edmonds, and Unit Manager Kinser at Pocahontas State Correctional Center ("Pocahontas") (collectively "Defendants"). Defendants filed motions for summary judgment arguing that Wilson failed to fully exhaust available administrative remedies before filing this action. After reviewing the record, the court will deny Defendants' motions.

I.

Wilson alleges that the defendants: subjected him to excessive force; subjected him to cruel and unusual living conditions by housing him in a segregation cell and denying him adequate medical and mental health treatment; and filed false disciplinary charges against him. He also claims that staff at Pocahontas were not properly trained, and that adequate policies and procedures do not exist—or are not followed—regarding "vision impaired, hard of hearing, and mentally disabled or emotionally disturbed prisoners." Defendants have moved for summary judgment as to Wilson's excessive force claims, arguing that he failed to exhaust

administrative remedies before filing this action.[1] In response to the motions, Wilson files an affidavit asserting that administrative remedies were not available to him.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive

---

[1] Defendants also address a possible bystander-liability claim, but the court construes those allegations as a living-conditions claim concerning Wilson's placement in a segregation unit. Defendants acknowledge that Wilson's complaint did not clearly identify his claims and requested that, if the court discerned any claims not addressed in Defendants' motions, they be given an opportunity to respond to those claims.

evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

## III.

The defendants argue that Wilson failed to exhaust available administrative remedies as to his excessive force claims before filing this action, as required by 42 U.S.C. § 1997e(a). For the following reasons, the court will deny their motions for summary judgment.

A. <u>Failure to Exhaust: Legal Standard</u>

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his

administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

B. <u>Failure to Exhaust: VDOC Procedures</u>

In support of the defendants' motions for summary judgment, the Human Rights Advocate at Pocahontas, C. Smalling, provides affidavits; Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and Wilson's grievance record related to the excessive force claims in this action. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Human Rights Advocate Smalling explains that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the claims in this action are grievable under OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made

a good-faith effort to informally resolve his complaint. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If a response is not given to the inmate within 15 days of the informal complaint being logged, the inmate may proceed to filing a regular grievance and must attach the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the time period allowed to file a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day that they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days from the date it is received with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or

Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (to include any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

C. Failure to Exhaust: Analysis

Wilson alleges that Defendants used excessive force against him on or about May 5, 2019,[2] while he was housed at Pocahontas. Wilson remained at Pocahontas until July 10, 2019, when he was transferred to Green Rock Correctional Center ("Green Rock") before being transferred to Buckingham Correctional Center ("Buckingham") sometime before January 13, 2020. According to Human Rights Advocate Smalling, the only grievance record related to Wilson's excessive force claims is an informal complaint Wilson filed on January 13, 2020, while he was housed at Buckingham. In the informal complaint, Wilson complained that Officer Fowler assaulted him and hit him repeatedly in the head at Pocahontas on May 5, 2019. The informal complaint was received by Buckingham's grievance department on January 16, 2020, and forwarded to Pocahontas. Human Rights Advocate Smalling received Wilson's

---

[2] In some instances, Wilson refers to the incident as occurring on May 7, 2019, but the difference in the dates is immaterial to the court's adjudication of the motion for summary judgment.

-6-

informal complaint in the grievance department at Pocahontas on January 28, 2020. Smalling processed Wilson's informal complaint and Investigator Sgt. Johnson responded to it on January 31, 2020. In his response, he stated, "In order for me to investigate this can you tell me where this alleged incident happened and why you waited eight months to report it? I also need a full statement of details regarding the alleged incident." The response was mailed to Wilson at Buckingham. There is no dispute that Wilson did not subsequently submit a regular grievance regarding that informal complaint. It is undisputed from the record that Wilson did not fully exhaust administrative remedies as to his excessive force claims. Accordingly, the court will consider whether administrative remedies were "available" to Wilson.

In response to Defendants' motions, Wilson submits an affidavit alleging that "immediately" after being placed in segregation on May 7, 2019, he "filed a grievance" which was "ripped up in front of" him. Later that day, Wilson submitted another grievance to the captain who was collecting mail, and that grievance was also ripped up. Wilson states that, at a disciplinary hearing on May 10, 2019, he "continued to complain about the treatment, assault, and injustices to the hearings officer." Wilson claims that on June 4, 2019, he talked with the institutional lawyer who "took down [his] complaints in a letter" that was sent to several individuals, including the Warden of Pocahontas. Wilson states that the Director of the Virginia Department of Corrections conducted an investigation as a result of this letter. He further states that, while he was at Green Rock, he was called to the investigator's office and the investigator "took down [his] complaints on all parties involved." Finally, Wilson states that on June 5, 2019, he filed a complaint with the United States Department of Justice.

Inasmuch as Wilson avers that prison staff "ripped up" his grievances twice, the court

finds a genuine dispute as to whether administrative remedies were available to Wilson. *See, e.g.*, *Washington v. Rounds*, 223 F. Supp. 3d 452, 460–61 (D. Md. 2016) (finding a genuine dispute of material fact regarding exhaustion when there was "some question as to whether [the inmate's] attempts to file grievances were impeded by prison personnel"). Accordingly, the court cannot grant summary judgment to the defendants as to the Wilson's excessive force claims.

## IV.

For the reasons stated, the court will deny defendants' motions for summary judgment as to Wilson's excessive force claims.[3] Because the defendants have not addressed Wilson's living conditions, due process, and training/policy claims, the court will allow Defendants the opportunity to file a new motion for summary judgment.[4]

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 30th day of September, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[3] If Defendants would like to pursue an evidentiary hearing as to the availability of administrative remedies, they may file a motion requesting such.

[4] Wilson has filed a motion seeking appointment of counsel. (*See* ECF No. 37.) The court cannot require an attorney to represent an indigent civil plaintiff. *See Mallard v. United States D. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989). But the court may *request* that an attorney represent an indigent plaintiff when "exceptional circumstances" exist. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances depend on the type and complexity of the case and the ability of the plaintiff to present it. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard*, 490 U.S. at 309. The court finds that Wilson's circumstances are not sufficiently exceptional to justify appointment of counsel at this time and, thus, will deny his motion without prejudice.